# Johnson *v.* The State.

### Murder.

(Decided September 7, 1916. 72 South. 766.)

1. **Appeal and Error; Harmless Error; Evidence.**—Where the court subsequently ruled out the answers to the questions to which objections were interposed, the original ruling, if erroneous, was harmless to defendant.

2. **Evidence; Fact or Conclusion.**—Evidence that deceased was cursing or using curse words just prior to and at the time of the altercation which resulted in the homicide, offered by defendant to show that deceased was cursing and using vile language towards the sister of defendant and another, the wife and mother-in-law of deceased, who were present at the time, was admissible as against the objection that it was a conclusion of the witness, and that he could only testify to the patricular words or precise language used, leaving it for the jury to determine whether deceased was cursing, since the use of the term "cursing" only requires resort to a common understanding for a definition.

3. **Same.**—A witness may not usurp the functions of the jury and state his conclusion of the facts at issue, but without offending against the rule as to opinion evidence or mere conclusion, he may give his conclusion as to the existence of certain facts either separately or collectively, where the statement called for no more than a shorthand rendering of collective facts.

4. **Criminal Law; Record; Omission.**—In view of sub-section 3, of § 635, Code 1907, and Acts 1915, p. 815, an agreement between the solicitor in the trial court and the attorney for defendant to omit from the record the written charges given at defendant's request was invalid.

APPEAL from Colbert Circuit Court.

Heard before Hon. C. P. ALMON.

Oscar Johnson was convicted of homicide and he appeals. Reversed and remanded.

A. H. CARMICHEAL, and JAMES JACKSON, for appellant. W. L. MARTIN, Attorney General, and P. W. Turner, Assistant Attorney General, for the State.

PELHAM, P. J.—Defendant's counsel make some 48 assignments of error on the record, and note 57 different exceptions to the ruling of the trial court on the margin of the transcript, but file no brief in support of the errors assigned or exceptions noted.

(1) Exceptions numbered 1 to 6, inclusive, relate to rulings on the evidence that, even though erroneous, are without injury, and are rendered harmless by the subsequent action of the court in ruling out the answers to the questions to which the objections were interposed.

(2, 3) The next in order in the assignment of errors are numerous assignments predicated upon the rulings of the court in sustaining objections of the solicitor to questions asked by the defendant of several witnesses for both the defendant and state as to whether the deceased was "cursing" or "using curse words" just prior to, and at the time of, the altercation between the defendant and deceased which resulted in the homicide. The questions were for the purpose of eliciting testimony to the effect that just prior to and during the altercation between the defendant and the deceased which resulted in the defendant shooting and fatally wounding the deceased, the deceased was "cursing" and using vile language and imprecations against defendant's sister and mother, who were the wife and mother-in-law, respectively, of the deceased, and who were present at the place of the fatal difficulty. Several of the exceptions reserved, which are made the basis of the errors assigned, are to the rulings of the court in excluding, on motion of the solicitor, answers of the witnesses to the effect that the deceased cursed these women at this time. It is evident from the recitals in the bill of exceptions that the court acted on the theory that it was a conclusion of the witness to state that he had heard the deceased "curse," or that he was "cursing;" that the witness could only testify to the particular words or precise language used, and it then became a question for the jury to determine whether the words used were curse words or "cursing." Some of the witnesses did, upon being further interrograted, undertake to give the precise language used, others did not; and the defendant was virtually and in effect deprived of the benefit of getting this evidence before the jury, and if the rulings of the court in this particular are erroneous, it was injurious to the substantial rights of the defendant, and must work a reversal of the judgment of conviction.

It was held in *Fuller v. State,* 117 Ala. 36, 23 South. 688 (on a trial under an indictment for murder), that it was proper to permit a witness to testify that he heard the defendant "cursing" at the time of the altercation between him and the deceased which resulted in the homicide, and that the precise language

used could be elicited, if desired, on cross-examination. This holding in *Fuller's Case* is approved and affirmed in the case of *Pope v. State,* 174 Ala. 63, 78, 57 South. 245.

The term "cursing" has a fixed and definite meaning that is well understood and only requires resort to common understanding for a definition of the term. There is no difficulty in the way of understanding the meaning of the phrase in accordance with common, everyday experience. In a dictionary sense, the word "curse" or "cursed" has a comprehensive and exact meaning, embracing, generically, "malediction," "imprecation," "execration," and is used as a hyperbolical expletive.—Century Dictionary. In common use, it is susceptible of but one meaning, and "where used by one towards another, it is intended to convey hate and detestation and as an invocation for harm and injury."— *Irwin v. Irwin,* 2 Okl. 180, 37 Pac. 548, 550.

See also, 2 Worse and Phrases, p. 1796.

A witness may not, of course, usurp the function of the jury, or court, and state his conclusion as to the very facts at issue between the parties; but he may, without offending against the general rule as to opinion evidence or stating mere conclusions, state his judgment or give his conclusion as to the existence of certain facts, either separately or collectively, where the statement calls for no more than the mere shorthand rendering of collective facts. We think the witnesses should have been permitted to answer the question eliciting testimony as to their having heard the deceased "cursing" the mother and sister of the defendant just prior to and at the time of the altercation between deceased and defendant which resulted in the homicide as a fact within their knowledge, and that the court's action in refusing to permit the introduction of this evidence, and in excluding testimony of a similar import on motion of the state, constitutes error necessitating a reversal of the case. Such testimony would be but the statement of a fact which they could well know with certainty, and the witnesses could have been cross-examined as to their knowledge of the particular words used, and the means and accuracy of their knowledge.—*Fuller v. State, supra; Pope v. State, supra; Bennett v. Fail,* 26 Ala. 605.

Other rulings on the evidence are free from error, or are rendered non-injurious by the subsequent action of the court in admitting competent and excluding inadmissible evidence.

[White v. The State.]

(4) The agreement set out in the transcript between the solicitor of the trial court and the defendant's attorneys to omit from the record the written charges given at the request of the defendant meets with strenuous objection in the carefully prepared brief of the Attorney General. The objection is well taken. —Code 1907, § 635, subsec. 3. "In case of appeal the charges *must* [italics ours] be set out in the transcript in the following manner:   (1) Charge of the court; (2) the charges given at the request of the plaintiff or the state; (3) *the charges given at the request of the defendant* [italics ours] ; (4) the charges refused to the appellant."—Acts approved September 25, 1915 (Acts 1915, p. 815).

For the rulings of the trial court on the evidence that we have pointed out, the case must be reversed.

Reversed and remanded.